Good morning, Your Honors. Counsel, I'm Nathan Davidovich. I'm the attorney for Mr. Bosse. This is also a this is a rehabilitation case. We're here on a number of different issues on appeal. One is the failure of the court to grant summary judgment on behalf of Mr. Bosse. We feel that clearly the evidence presented to the court not only established the prima facie case necessary, but also established that there was no business reason for the government, the INS, doing what they did. Basically, what happened is Mr. Bosse, as you've seen from the briefs, was an employee of INS, had medical issues starting in 1998, which was really undiagnosed diabetes, which wasn't diagnosed until September of 2002, 2001, excuse me. Because of the various issues that he had, there was quite a bit of absence from work, all of which were accompanied by medical notes. Yes. I think we understand the factual background, counsel. What about the failure to exhaust administrative remedies? That's sort of a threshold issue here, isn't it? That is a threshold issue, yes. The chronology was that we have a leave restriction letter issued in April of 2001. That letter simply said, if you're going to miss any more time, you have to have all these detailed doctor's reports, diagnosis, and so on. As we've cited in our brief, I think it was the Bennett case, that in itself was not an adverse employment reaction until something was done on it. There was a suspension in August that Mr. Bosse didn't complain about. At that point, you have to realize that he was sort of in a fog because of the diabetes. They didn't know what was going on with him. But, in fact, the next time that it became apparent they were going to start enforcing the leave restriction letter was in December 2001. In December 2001, right after that, within a couple of weeks, less than a couple of weeks, on December 14, 2001, he went to an EEO counselor. After that, on February 12, 2002, he filed a formal EEOC complaint alleging discrimination based on the enforcement of the leave restriction letter. Can I get a clarification? This is helpful, but are you saying that the issuance of the leave restriction letter at the outset was discriminatory, or it's in its enforcement, you're saying? It's enforcement because at the outset there was no adverse action. It's telling him this might happen if you do this. Well, there may have been. So you're saying that just issuing the leave restriction letter was not an adverse employment action, and it wasn't discriminatory? No. It might have been discriminatory, but it wasn't an adverse reaction, so it's not – there's no claim based on that alone. It's the enforcement aspect of it. But what triggers the claim with respect to the letter? What triggers the claim is their attempt to enforce it. Just as in the – And what constitutes the intent to enforce it? The letter is the letter that is written on a certain date. Yes. Well beyond the 45 days. Right. What constitutes the attempt to enforce it is when they're telling him and starting harassing him in December, saying even though he's giving all these doctor's notes for not being at work, I'm saying that, no, you're not complying, and then they're finding him AWOL. That's what's happening. That's what triggers the time period. And within that time period, he goes to an EEO counselor. But what is it exactly that happened that you say triggers it? I'm not quite – I don't think I understand. In December of 2001. I know the date. Okay. The testimony showed that he started being harassed about not having the specific information that INS wanted from doctors, even though he had doctor's letters. Yeah, but starting to be harassed. That's very, very puffy. Well, there were several things. There were several things that happened. One of the doctors said he can't shave because of the diabetes. Right. They ignored that. They said, I'm sorry, I don't care what your doctor says. You didn't go to the right doctor. Go to a dermatologist. That was in December 2001. They were making fun of his diabetes, of his illness, and of the way he was working. That's what triggered it, and it continued. So there was a triggering event in December. The triggering event, as I understand it, was the initial harassment, correct? That's what then sent him to the EEOC. Correct. All right. And that was in December 2001. Correct. And then thereafter, there were a number of other discreet, adverse actions that he's claiming, correct? Correct. Did any of those subsequent events ever get presented to the EEO counselor within 45 days of each of them occurring? With regard to the subsequent events, they were all, part of them were included in the actual EEOC charge. All of the events that took place were investigated by the EEO, were mentioned in the EEO. The EEOC filed two investigative reports, one in July 2002 and one in October 2002. The one in July 2002 references that he was about to be terminated. The one in October 2002 references that he, in fact, was terminated. Mr. Bossi also filed amendments to the original EEOC charge that he filed in February. He filed these by letter, indicating all of the subsequent events. So, yes, all of the subsequent events were brought to the attention of the EEOC. At that point, the EEO officer had already turned it over to the EEOC. So the EEOC got the question, were they presented to them within the 45-day time frame that they had to be presented or not? Assuming that they had to be. I can't answer that. Okay. I don't remember those dates. That's fine. When did he start his union grievance? Okay. Union grievance was started in October 23rd. I'm sorry, August 23rd, 2002, after the EEOC proceeding already started. And as we've argued in the brief, the filing of the EEOC proceeding was an election. Therefore, regardless of the fact that they went through an arbitration, that whole proceeding was a nullity. The grievance proceeding was a nullity and was meaningless. And the fact that they went through that proceeding doesn't change what the statute says. I think that fact goes to both of these issues. Is there any connection with his trying to ride two horses at the same time and his failure to exhaust the EEOC? Well, I don't think there was a failure to exhaust the EEOC. It looks like there was an attempt to ride two horses at the same time, but the second horse, being the grievance, was not done to the exclusion of the EEOC. In fact, he continued with the EEOC process, sending them amendments, filing position statements, trying his best to get the EEOC to come down with a decision. And he mentioned the termination to his contact with the EEOC. So it may have looked like riding two horses. The second horse couldn't get off the starting line. One other quick comment I want to reserve at least a minute. First of all, the government has a job to be a model employer. They have an affirmative action to do an interactive discussion regarding accommodation. The accommodation Mr. Bassi needed was simple. He needed an accommodation of no overtime, a less stressful environment. They didn't even talk to him about it. Interesting is nobody in his line of command ever doubted that he was sick, that he had a problem. There was nobody who didn't believe the doctor's reports. They were just saying, well, because we want this, this, and this in the doctor's reports, we're not going to accept this. That is arbitrary and is not part of the interactive proceeding. I have 30 seconds. I'll save 30 seconds. Thank you, counsel. Thank you. We'll hear from the government. May it please the Court, counsel. George Dara on behalf of the defendant appellee. Your Honors, the government respectfully submits that Judge Lovell's decision in this case was thoroughly exhaustive and analyzed each and every claim raised by the appellant. The government also firmly believes that the controlling issue in this case is the exhaustion argument. Clearly, the rule of this circuit is that anybody who feels that he's been discriminated against is required to contact an EO counselor within 45 days of the alleged discriminatory act. That's the clear controlling cases in Lenora and Vinny Otrus, which I think Judge Scanlon authored. Well, counsel, I'm interested in this case in your response to Mr. Davidovich's comment that the 45-day period is triggered by the attempt to enforce the letter, not the letter itself, but the enforcement which occurred in December. Your Honor, we believe the triggering event is the letter itself, because it certainly laid out specifications and the expectations of what problems he could face if he didn't comply with the specifics, by specifics that were set forth in that letter. Also following that letter, in August of that same year, he faced a 14-day suspension for the reason that he did not comply with the leave restriction letter. Clearly, this was an adverse personnel action taken, and clearly was well beyond the 45 days of the first contact with an EO counselor, which he admits himself didn't occur until December of 2001. When he does contact the EO counselor, it's also interesting that the only items that he asserts that he is asking for the investigation is the leave restriction letter. So when he goes to the EO counselor, he's specifically identifying that as one of the items that he alleges discriminatory in the basis for the investigation. Your Honor, I think the timeline in this case is very clear, that the leave restriction letter did occur in April of 2001. He then faced a 14-day suspension in August of 2001. First contact with an EO counselor is on December 14, 2001. He files the complaint with the EOC in February of 2002. All of these events occur long in advance of the termination, which actually occurred in August of 2002. The argument as far as the filing the grievance and whether or not that's an election. Clearly, the termination wasn't raised at the EOC because it hadn't taken place yet. Once he is actually terminated, he immediately, within the 15 days allowed under the collective bargaining agreement, contacts the union representative, and they seek to go to arbitration. He does file an amendment of the EEOC, and in two letters to the EEOC, specifically states that he'd recently been terminated, but he chose not to pursue that termination through the EEO process. Clearly, there was an election made. And once you make that election, it is you can't go back and say, well, I don't like the decision. Now I want to add it. Your Honors, there were other items as far as whether or not the plaintiff should be granted summary judgment. You didn't ask any questions concerning that. I don't know if you have any issues, but Judge Level 30 went through what is required of a prima facie case and how it was not met in this case. Also, the added issue that was raised on appeal was the question of the award of cost. Again, we feel that's thoroughly briefed, and I think our position is set forth unless anybody has any questions. Roberts. No questions, counsel. Thank you. Thank you. We will hear from Mr. Davidovich. You have a little bit of reserved time. One thing I didn't mention before was the granting of summary judgment on the breach of contract claim. The Court will note that the breach of contract claim wasn't only about disability, but also included the fact that they violated their own procedure manual, which says that if somebody retroactively brings a notice for their absence, it should not be counted as absent without leave, but should be counted as excused leave. That wasn't done. That's breach of contract. That also goes to the issue of their pretext for discrimination. Counsel, it seems to me you should respond to Mr. Dara's point that there was an adverse action in August, the suspension. What about that? Okay. The fact that there is an adverse action and it's not attacked doesn't prevent when it's being enforced again to attack the subsequent adverse action. It could have been attacked in August. The fact that it wasn't attacked doesn't mean that from there on they can just keep discriminating in any manner they want. Every time that they tried to enforce the leave restriction letter, they were discriminating. Each one is a separate act of discrimination and not dependent on the other. You're using the continuing theory. All right. Thank you, Counsel. Thank you, Your Honors. You're very welcome, Counsel. The case just argued will be submitted for decision.
judges: Goodwin, O'scannlain, Fisher